**AFFIDAVIT**

VICTOR A. WILD, Assistant United States Attorney, being duly sworn, states:

1. I am the Assistant United States Attorney assigned to the prosecution of United States v. Peter V. Maggio, III, *et al.*, Criminal Case No. 04-10231-MLW.[1]

2. I submit this Affidavit in response to the Court's Order dated August 15, 2006, to address: (a) the timing and nature of the Government's submission of loss information; and (b) the Government's response to the Probation Office's request that the Government move to continue the sentencing hearing.

**SUBMISSION OF LOSS INFORMATION**

3. At the Rule 11 hearings as to defendants Howe, Havey, Paradiso, O'Neill and Sacco, the Government filed with the Court copies of letters to counsel for each defendant advising of the specific loss amount the Government would assert was applicable to the individual defendants for calculation of the sentencing guidelines. Each letter was accompanied by a chart reflecting the specific loans in which the defendant actively participated, together with the net loss amounts for each of the applicable loans. *See* Government's Memorandum to Dennis O'Leary, Clerk to Chief District Judge Wolf, June 14, 2006 (with attachments). *See also* Exhibits marked in connection with Rule 11 proceedings on June 15 and June 23, 2006.

4. On May 30 and July 7, 2006, the Government furnished the Probation Office with copies of letters mailed to victims requesting Victim Impact Statements.

On or about July 7, 2005, I spoke with the United States Probation Officer with primary responsibility for preparation of the Pre-Sentence Report in this case. I advised the Probation Officer that the Government's preparation of the statement of the offenses was delayed because it involved 6 defendants with differing roles as well as different loans and concomitant losses attributed to each of them. I also advised that individualized letters and charts regarding 5 of the defendants had been filed with the Court at the plea proceedings. I further advised that the Probation Office for the Northern District of New York had already confirmed loss information in connection with the sentencing of defendant Deveau. I further advised that the Government was attempting to provide a

---

[1] Among the seven defendants: Deveau pled guilty in NDNY pursuant to Rule 20 transfer and was sentenced in April 2006; Maggio pled guilty on April 19, 2006; Havey, Paradiso and Sacco pled guilty on June 15, 2006; Howe and O'Neill pled guilty on June 23, 2006.

statement of the offenses which would provide Probation as much explanation as possible regarding the overarching scheme involving in excess of 180 loans, and the individual activities among each of the defendants.[2]

6. On the late afternoon of July 13, 2005, I attempted to email to the Probation Officer the Government's statement of the offenses, together with copies of the 5 letters to counsel and accompanying charts filed with the Court.

7. On the morning of July 14, 2005, I learned that the email to the Probation Officer had not gone through, apparently because the size of the attached documents exceeded the available sender email space. I attempted the email again on July 14, 2006, before forwarding the documents to a secretary to assure that the documents were in fact delivered to the Probation Officer.[3]

8. The statement of offenses provided by the Government, in some 55 pages, contained a detailed explanation of the overarching scheme and a detailed explanation of the roles of each of the defendants, together with specific loss information.

9. A Memorandum filed with the Court by the Probation Department on August 15, 2006, noted submission of the Government's statement of offenses, but did not acknowledge that the Government provided therein specific information regarding losses suffered by each of the 11 commercial lenders: In fact, page 1 at fn 1 of the statement contained the following:

> 1. The FBI obtained loss figures from the lenders prior to Indictment. Upon defendant Deveau pleading guilty in NDNY, the Probation Department in NDNY re-contacted lenders and confirmed the following loss figures: CNH (formerly New Holland Credit: $8,552,393.17; Volvo Commercial Finance, LLC: $476,034.30; CIT Group: $4,963,832.97; Green Tree: $72,179.69; Eastern Bank $6,681.31; U.S. Bancorp Leasing & Financial: $266,307.39; Textron Financial Corp.: -0-; Orix Financial Services, Inc.: $118,107.75; General Electric Capital Corp.: $901,129.67; Caterpillar Financial Services Corp.: $69,817.26. In addition, O'Connor GMC reported a loss of $305,376.82 where loans were

[2] The Government concedes that in addition to discussing the matter with the U.S. Probation Office, the Government should have sought leave of the Court to provide its statement of the offenses to the Probation Office beyond the date of June 30th set in the Court's Procedural Order re: Sentencing.

[3] The statement of the offenses and charts of subject loans contain identifications of individuals and other matters that should not be made available to the public. For that reason, a complete package of the materials will be submitted to the Court under separate cover and under seal.

granted “with recourse”, whereby lenders could hold the dealership liable for losses.

10. The Memorandum filed with the Court by the Probation Department on August 15, 2006, also did not mention that the Government simultaneously provided the Probation Office with copies of the letters to each counsel, together with charts identifying the specific loans and net losses applicable to each defendant. These were the same documents filed with the Court at plea proceedings.

11. On or about July 31, 2006, I spoke further with the U.S. Probation Officer. When it appeared that the Probation Officer did not have some or all of the charts accompanying each of the 5 letters to defense counsel, I immediately provided new copies of those charts.

12. On or about August 1, 2006, I spoke with FBI Special Agent Scott A. Robbins. It was agreed that the Government would be pro-active and that Agent Robbins would contact the Probation Officer to offer such assistance, if any, as may be requested by the Probation Office. I have been informed that Agent Robbins spoke to the Probation Officer with primary responsibility in this case and to another Probation Officer assigned to the report concerning one defendant. I have been further informed that the Agent asked whether any additional information was needed by the Probation Department regarding the offenses, losses or other matters. I have been informed that the only matter requested was copies of FBI 302's containing statements of defendants. I am aware that those reports were provided to the Probation Office by the Agent.

13. On August 10, 2006, I received a call from the Probation Officer with primary responsibility in this case asking for clarification regarding certain of the subject loans. I immediately scheduled a joint meeting at the FBI among the Probation Officer, the FBI Agent, the FBI Financial Analyst Christopher Gizzi and myself for the morning of August 11, 2006.

14. On August 11, 2006, the parties met at the FBI's offices as scheduled. The Probation Officer advised that he intended to seek an additional two weeks from the Court to complete the draft PreSentence Report. We reviewed materials to confirm the loss figures and to confirm for the Probation Officer the reasons the Government asserted that defendant Paradiso was or was not directly involved in particular loans taken in his name.

15. The Memorandum filed with this Court by the Probation Department on August 15, 2006, declared that the Government "conceded that the loss information was incomplete and advised the Probation Office that additional information would be forthcoming within two weeks." In fact, as set forth above the Government had previously provided detailed information concerning loss. Two modifications to loss details may have been made during the meeting on August 11, 2006, but the loss information was not otherwise incomplete. Moreover, the Probation Officer requested a reformatted chart, sorted by

borrower rather than lender, as to all +/-180 loans under the overarching scheme. The Government offered to immediately that day produce the chart. However, the Probation Officer advised that production of the reformatted chart "early next week" would suffice. The Probation Officer did not request, nor did the Government offer, any additional information or material to be produced thereafter. The reformatted chart was delivered to the Probation Office on August 15, 2006. In conversations between the Probation Office and me since August 11, 2006, no additional information has been requested from the Government.

## THE PROBATION OFFICE'S REQUEST FOR CONTINUANCE

16. On August 11, 2006, the Probation Officer called me to reiterate that the Probation Office wanted two additional weeks to complete the draft PreSentence Report. The Probation Officer advised that his supervisor had directed him to ask the Government to file a motion to continue the sentencing hearing. Because, however, it was the Probation Office, not the Government, that sought the continuance, I suggested instead that the Probation Office submit the request directly to the Court itself and explain to the Court that it needed additional time to complete the PreSentence Report in this complex case. I was also aware that Local Rule 7.1 (A)(2) may require the Government to confer with multiple counsel before filing a motion to continue, and that counsel may not be available on a late Friday afternoon. I further stated that if the matter presented a genuine problem for the Probation Officer, or his supervisor, he could recontact me and I would do what I could to assist further.

DATED this 25th day of August, 2006.

VICTOR A. WILD
Assistant U.S. Attorney

Subscribed and sworn to before me this 25th day of August, 2006.

NOTARY PUBLIC

MY COMMISSION EXPIRES:




