IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL CASE NO. 04-10231-MLW |
| v. | ) |
| PETER V. MAGGIO, III, *ET AL.* | ) |

GOVERNMENT'S REPLY TO DEFENDANT'S
*SUPPLEMENTAL* SENTENCING MEMORANDUM
RE: SOPHISTICATED MEANS ENHANCEMENT

The Government received defendant O'NEIL's Supplemental Sentencing Memorandum on October 30, 2006, and submits this Reply for this Court's consideration.

Defendant O'NEILL attempts to escape the application of an enhancement for "use of sophisticated means" pursuant to 2F1.1(b)(5)©. *See* PSR at ¶238. *See also* Government's Sentencing Memorandum Re: Defendant Michael O'Neill at Section IV, pp 7-10 (incorporated herein by reference).

O'NEILL acknowledges, as he must, the force of United States v. Lewis, 93 F.3d 1075 (2d Cir. 1996) for the proposition that where the overarching scheme involves "sophisticated means" the sentencing court is obligated to apply the enhancement to individual defendants. The Government's sentencing memorandum cited several cases, not discussed by O'NEILL, applying that principal. In an effort to distinguish Lewis, O"NEILL relies entirely upon United States v. Amico, 416 F.3d 163 (2d Cir. 2005).

O'NEILL declares that because <u>Lewis</u> involved USSG 2T1.1(b)(2), involving "sophisticated means" applicable to offense calculation in a tax case, "it should be argued that Lewis should have no implication in this case."  O'NEILL Memorandum at 5.  O'NEILL is plainly wrong for three reasons.  First, the <u>Lewis</u> principle has been applied with the same force to non-tax fraud cases.  *See, e.g.*, <u>United States v. Cushing</u>, 99 Fed. Appx. 269, 271-72 (2d Cir. 2004(applying same principle to $24 million securities fraud prosecution); <u>United States v. Finck</u>, 407 F.3d 908 (8th Cir. 2005)(*citing* <u>United States v. Jackson</u>, 346 F.3d 22 (2d Cir. 2003) for application of <u>Lewis</u> to scheme to obtain automobiles by wire fraud).  Second, the meaning(s) of "sophisticated means" found in §2F1.1, Application Note 15, and §2T1.1, Application Note 4, despite some very minor word variations in one sentence, are virtually indistinguishable and contain the same wording to explain the application of the enhancement.  Third, as in <u>Lewis</u>, the personal actions of O'NEILL individually compel application of the enchantment for his sentencing.  *See* Government's Sentencing Memorandum at 8-10.  O'NEILL's own memorandum acknowledges that the <u>Lewis</u> court applied the enhancement because Lewis "was well aware that sophisticated means were being used to avoid detection and in fact was responsible for some of them."  O"NEILL memorandum at 4, citing <u>Lewis</u>.  <u>Lewis</u> therefore **does** apply here where O'NEILL was aware that "the 8/27/99 loan to Didonato *** had some phony

documents attached to it, [and] that there might have been other phony loan documents", Def. PSR Obj. ¶236; and O'NEILL "had first hand knowledge that Deveau supplied phony down payment amounts....", O"NEILL Response to Statement of Offenses at 4.

O'NEILL reads Amico to say the enhancement might not apply to "the minor participant who was unaware and had no notice of the sophisticated means used by other co-conspirators...." O"NEILL Memorandum at 5. The obverse is true as to O'NEILL. by his own admissions he was aware that co-conspirators used bogus documents and down payments to conceal and continue the scheme in which he was the gatekeeper for CIT. Finally, there is no escaping O'NEILL's personal use of sophisticated means when CIT sent him to conduct an audit of suspect loans, and he wrote an internal memorandum concealing from CIT what he had known about the conduct of others for a long time, and concealing what he had been doing personally to further the scheme.

Indeed, none of the defendants here can claim to be a minor participant, and each did personally employ sophisticated means. *See* discussions in Government's sentencing memorandum re: each defendant. Even as to the "straw" borrowers, each of them opened a "DBA" entity, opened various bank accounts, each knew that others were enlarging the scheme by acting as co"straw" borrowers on loans of their own, each necessarily knew that financial *of some type* had to be used to support their own loans, each carried cash and

3

documents from Boston to Deveau in New York, and each traveled interstate to sign loan papers. *See, e.g.,* Jackson, 346 F.3d at 25 (main office in one state, conducting operations in another as "not an especially elaborate scheme" but connoting "sophisticated means."); Finck, 407 F.3d at 915 (repetitive and coordinated scheme to obtain vehicles, transportation of vehicles in interstate commerce, as indicia of "sophisticated means"); United States v. Friend, 104 F.3d 127 (7th Cir. 1997)(bribing IRS employee constituted "sophisticated means").

Respectfully submitted this 1st day of November, 2006.

          MICHAEL J. SULLIVAN
          UNITED STATES ATTORNEY


       By:  /s/ Victor A. Wild
          VICTOR A. WILD
          Assistant U.S. Attorney
          One Courthouse Way
          Boston, MA 02210
          (617) 748-3100

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the attorneys listed below a copy of the foregoing document via ECF.

          /s/ Victor A. Wild
          VICTOR A. WILD
          Assistant U.S. Attorney


| | |
|---|---|
| James M. Merberg, Esq. | William M. White, Esq. |
| 66 Long Wharf | 1 Faneuel Hall, 3rd Floor |
| Boston, MA 02110 | Boston, MA 02109 |
| Attorney for Peter V. Maggio | Attorney for Sean Sacco |

```
Joseph S. Oteri, Esq.              Elliott M. Weinstein, Esq.
20 Park Plaza                      228 Lewis Wharf
Boston, MA 02116                   Boston, MA 02110
Attorney for Michael R. O'Neill    Attorney for William A. Howe

Scott P. Lopez, Esq.               Roger Witkin, Esq.
24 School Street                   6 Beacon Street
Boston, MA 02108                   Boston, MA 02108
Attorney for Louis A. Paradiso     Attorney for Matt A. Havey
```