UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal Case No. 2004-10231-MLW |
| | ) | |
| WILLIAM A. HOWE | ) | |
| Defendent Reg. No. 16742-038 | ) | |

FILED IN CLERK'S OFFICE
2007 NOV -8 P 2: 09
U.S. DISTRICT COURT
DISTRICT OF MASS.

## MOTION TO REQUEST SENTENCE MODIFICATION

Now comes the defendent, William A. Howe, Pro Se, in accordance with Rule 35 of the Federal Criminal Code, Rules and Regulations, to request a modification (reduction) of my sentence. From 21 months imprisonment, to a sentence of 10 months imprisonment and eight months of home confinement. No changes are being requested regarding the three year's probation. Note, at first glance this appears to be a request to cut my term in half, but as will be seen, that is not the case. Following are my reasons.

The first involves the actual gross disparity of the original sentence implementation, with and amongst my co-defendents (except for Mr. Maggio, who for all intent and purposes I am not considering during this motion). Normally a 21 month sentence, as I and Mr. O'Neil received, involves 18 months of actual time served; 12 months incarceration and 6 months in a halfway house/homeconfinement enviroment. (Note 15%, or 3 months of the 21 month sentence is deducted for good time). Mr. O'Neil is actually serving this sentence in a minimum security facility in NY or PA. I was sentenced to the same time, but because I am serving my time at Devens, in the First District, then I am scheduled to serve 16 months and one week of actual incarceration, and only 7 weeks in a halfway house/home confinement enviroment. An increase of 35% in actual time of incarceration.

In a similar vein, two other co-defendents were sentenced to a year and a day (DeVeau and Paradiso), and because their sentences are being served in NY or PA, then they will serve only 4½ months incarceration, and 6 months in the halfway/home confinement mode. (With a year and a day, you receive 1½ months off for good behavior, then 4½ months incarceration, then 6 months halfway/home confinement). So, their incarceration of 4½ months is less than 30% of my 16½ months.

I realize that during the sentencing hearings in Oct. and Nov. 2006, much was made about the parity of sentencing of defendents in the same offense with similar levels of complicity, and that your honor did take those facts into consideration. But I believe

your honor was of the understanding that all sentences would be served at a similar level of incarceration, or close to it, and in my case, that is not the situation. I am, or will actually be incarcerated from two to four times as much as the other defendents. It's ironic that this is happening, because one of the linchpins of our judicial system has always been the principle of basic fairness regarding prosecution, and implementation of sentences, amongst similar co-defendents.

I also realize, and am thankful for, the fact that your honor has already deviated downward from the sentencing guidelines, for the sentences imposed on myself, and Mr. O'Neil and Mr. Paridiso. As for Mr. DeVeau, he had a Section 5.1 Agreement, to receive only a year and a day, in exchange for his "extensive cooperation". Of course the reason why he was able to provide this cooperation was the fact that he was one of the two principals in this case. He was directly involved in all aspects of the scheme, and benefitted substantially from it. Whereas Mr. Paradiso, Mr. O'Neil and myself had no idea of the broad scope of the fraud; except for our own individual actions within it. And even then, when we were questioned by the FBI, we all also cooperated fully. I cannot speak for the others, but as was shown during the hearings, I met with the FBI and the Assistant U.S. Attorney, Victor Weitz, on at least six occasions, spanning a time frame of 15 to 20 hours.

Another factor in comparison of actual time served amongst defendents, is where the time was to be served. In all instances the recommended sentences were to be served in minimum security facilities. Again, that's not how things work at the Devens facility. I self reported on Feb. 22, 2007, fully expecting to be sent to the satelite camp. Instead, I was immediatly placed in a Secured Housing Unit (SHU), which is basically a 23 hour, solitary confinement lockdown; lights on for 72 consecutive hours; no outsite exercise for 96 hours; no shower (broken)for 1 week; no mail; no phone; no visitors. After one week, I was transfered to a medium security prison; walls;barbed wire; lock down at night; controlled movements. So, for my first five weeks, I was not serving anything like a minimum security sentence.

Because of all of the above, I am asking this court to more fairly equalize my sentence similar to my co-defendents. A term of 10 months incarceration (no good time), plus eight months of home confinement, still leaves an 18 month time of actual sentence. I'm still incarcerated for twice as long as Mr. DeVeau and Mr. Paridiso; and almost as long as Mr. O'Neil. But considering my 5 weeks in solitary and medium security, then that should closely resemble the two months in a minimum security facility. This 10 months incarceration and 8 months' home confinement is more in line with the fairness and parity of sentencing principle.

There are four additional benefits which will occur if this motion is granted. The first benefit will be a compassionate consideration for me and my family. A ten month term of incarceration would have me released to home confinement on or about Dec. 21, 2007. I am currently 66 years old and by being home on 12/21/07 it would enable me to celebrate: my son's birthday (12/24); Christmas with my family (12/25); my wife and my 37th wedding anniversary (12/28); my wife's birthday (1/11/08); and my aunt's 100th birthday (2/07/08). Note: at this time, 10/22/07 my 99 year old aunt is in a nursing home where she just fell and broke her hip. She has 3 or 4 steel pibs/rods in her hip and is currently undergoing thereapy. She was never married and I am her only nephew living closeby. Prior to my incarceration she depended upon me for most of her needs outside of the nursing home.

The second benefit is towards my restitution. I agree with all present at the sentencing hearing that it is highly unlikely that I will ever pay the $4.2 million amount, but I will be making periodic payments once I am working again...to the tune of $500-$1,000. per month initially. These I will be able to start seven months earlier (12/07 vs. 7/08). Also from a financial point of view I will now have to return to work, not only to make restitution payments, but also to help to provide income to my household to pay the regular bills and financial obligations.

Speaking of my wife, the third benefit will be directly for her. She is living alone and with winter coming on, it will be very difficult for her. Because of my situation she has been very emotionally upset, esp. when during the past seven months her best friend's husband passed away, as well as her 95 year old uncle. So being alone has been very difficult for her and I am concerned about her safety during these next few months. The responsibility of assisting my 99 year old aunt has also fallen upon her shoulders.

And finally, but in my opinion, the most important reason of all the others I have mentioned, is the fact that I will be able to donate blood platelets that much sooner. In Dec. 07 I'll be able to donate for research purposes, and then in Dec.08 I'll be able to once again donate for tranfusion purposes. A full seven months sooner than if I have to wait until July 09 (one year after I am released at the current schedule). This seven months may not seem like a lot, but it enables me to make approx. 15 platelet donations which will have an impact on the lives of up to 150 children. At my sentencing hearing I provided a copy of a letter from Children's hospital thanking me for over 20 gallons of blood donated. I'm enclosing another copy with this motion, as well as copies of newspaper articles reminding everyone of the severe shortage of blood donations. I regularly gave 24 platelete donations per year, equivalent to 1% of all donations at Childrens. Blood donations at Children's Hospital total 15,000 per year, from 10,000 donors

So as can be seen, most people donate once or twice per year, not 24 times as I did, and will continue to do so , providing I stay healthy, which I am.

In summary, what I am actually requesting is what should be a two month incarceration reduction (although in this District it is up to 6 months)...from the normal 12 months to be served in a minimum security facility, to a 10 month term.  In exchange for this two month "tweaking" of my sentence, the benefits to be incurred will be:
  1/ A fairer incarceration imposition amongst my co-defendants.
  2/ An earlier start to my restitution payments, as much as seven months earlier.
  3/ A personal benefit to me and my family to spend the holidays and birthdays together.
  4/ A safer enviroment for my wife during the upcoming winter months.
  5/ The potential saving of the lives of up to 150 children through my earlier platelet
     donations.
  6/ My 99 year old aunt (soon to be 100) will be provided a more fuller and comfortable
     time during her few remaining years, by my providing for her personal needs.

I am not a flight risk.  I have had no disciplinary incidences while incarcerated, and I had no incidences during my 27 months of pretrial probation, while released upon personal recognances.

I am not able at this time to quote case law regarding my motion request.  Most likely there have been a few cases where judges have granted similar motions, but I am just as certain that the U.S. Attorney's office could most likely find 20 or 30 cases for every one of mine, whereby the judge has denied a similar request.  But I do not believe that is the main point here.  I believe that a main point is that I have been significantly punished to date, and to reduce my incarceration by just the two months, it will have a significantly more beneficial effect upon the lives of 150 children.  I don't have funds to pay large fines or penalties, as some large financial institutions do. I only have a supply (ever replenishable) of very rich and nutritious blood platelets ( for reasons I cannot fully explain), which are very beneficial to saving lives.  And that is how I try to pay back society as best and as often as I am able.

Along with this motion, I am providing 5 exhibits, as follows:
  A/  Copies of newspaper articles demonstrating the urgent need for blood donations.
  B/  Information and statistics regarding donations.
  C/  A letter indicating part of my past donations.
  D/  Copy of an article about blood disease (cancer) and the need for more research.
  E/  Copy of a recent letter from my 99 year old Aunt (see page two).

Based upon the previous discussion, I respectfully request that this Court modify my sentence by ordering that I serve a total of ten (10) months incarceration and eight (8) months of home confinement, which is more fairly consistent with my co-defendents' sentences. Thank you.

Respectfully submitted by

_____

William A. Howe  
Defendent/Inmate  
#16742-038

Date:   November 1, 2007


### Certificate of Service

I hereby certify that a copy of the foregoing/attached motion was served by first class mail upon the office of Mr. Victor Weitz, Asst. U.S. Attorney, U.S. District Courthouse, One Courthouse Way, Boston, Ma. 02110, this first (1st) day of November, 2007.

_____

William A. Howe  
Defendent/Inmate  
#16742-038